## WRIGHT v. KINSEL et al.
### No. 8511.

Court of Civil Appeals of Texas. San Antonio.
Dec. 17, 1930.

Rehearing Denied Jan. 21, 1931.

Sidney P. Chandler, of Corpus Christi, for plaintiff in error.

Mann, Neel & Mann, of Laredo, for defendants in error.

COBBS, J.

Jesse Wright, trustee for the estate of B. B. White, bankrupt, plaintiff in error, against E. A. Kinsel, defendant in error, presents this record on an application for a writ of error.

On the 3d day of September, A. D. 1926, E. A. Kinsel and wife, Linnie Kinsel, entered into a certain building contract with B. B. White, wherein the said B. B. White obligated himself to construct in a good workmanlike manner, and according to the best of his art and skill, a one-story brick, hollow tile garage building on certain property in the town of Hebbronville, Jim Hogg county, Tex., fully described in the contract, all in accordance with certain plans and specifications attached to and made a part of the contract.

By the terms of said contract the said E. A. Kinsel and wife were to pay to the said B. B. White the sum of $9,000 on completion of the building, which, as specified by the contract, was to be $1,500 in cash and five materialman's notes of even date with said contract, in the sum of $1,500 each, interest at the rate of 8 per cent. per annum payable annually, due in one, two, three, four, and five years. This part of the written contract by the undisputed evidence of the parties was modified to the extent that, prior to the execution of said contract, it was agreed between E. A. Kinsel and B. B. White that the same would be a cash job all payable upon completion, or as the work progressed, and the notes were only executed for the purpose of enabling E. A. Kinsel to secure the money for the purpose of erecting the building; that prior to the entering into of the contract E. A. Kinsel himself had made arrangements with one Mr. Yeager to loan him $7,500, representing the $7,500 for which he executed notes to B. B. White, but which never came into possession of B. B. White and which were transferred to Mr. Yeager, and the funds secured therefrom placed in the bank in what was known as the "Kinsel-White Building Fund" for the purpose of erecting this building and making payments thereon as the work progressed. This fund was under the exclusive control and management of E. A. Kinsel, and all checks drawn thereon were drawn by E. A. Kinsel.

As the work progressed E. A. Kinsel paid to B. B. White a total of $7,800, and, after exhausting the $7,500 received by his sale of the notes to Mr. Yeager, placed $1,500 additional by his own personal check in said bank account and upon which he issued checks to cause the total expenditure or total sums paid B. B. White to be the sum of $7,800.

This becomes important, in view of the contention of plaintiff in error that this suit was one for a breach of contract exclusively, and that title to this money in the Hebbronville Bank had passed to B. B. White and then to his trustee in bankruptcy.

Simultaneously with the execution of the contract, or shortly thereafter, B. B. White furnished a bond from the National Surety Company to E. A. Kinsel and Linnie Kinsel to secure his performance of said contract.

On the 24th day of December, 1926, after B. B. White had left the job and abandoned it, E. A. Kinsel took the position that he had not completed the work and demanded that he return and complete the same, at the same time notifying his bondsmen.

B. B. White refused to return and do any more work on the building, and this suit followed.

As shown by plaintiff's amended original petition, they asked for damages in the sum of $4,500 against the National Surety Company; and an additional sum of $1,545 against B. B. White, and that the First National Bank of Hebbronville be ordered to pay to E. A. Kinsel the $1,200 which was therein deposited and to which they asserted that the title was in E. A. Kinsel.

B. B. White was adjudged a bankrupt on the 2d day of April, 1929, and discharged in bankruptcy on the 2d day of August, 1929.

After it had been established that B. B. White had been adjudged a bankrupt, permission was given for his trustee, Jesse Wright, to intervene in this cause; the plaintiffs in said cause, being defendants in error herein, filed their answer to said plea of intervention, wherein they asked that they be permitted to prosecute said suit as against the National Surety Company and for judgment establishing their right, title, and interest in and to the $1,200 held by the First National Bank of Hebbronville.

This cause came on for trial on the 9th day of December, 1929, and plaintiffs recovered judgment for the sum of $3,250 against the National Surety Company upon which a credit was ordered to be allowed of $1,200, being the same $1,200 in the First National Bank of Hebbronville, and the bank was ordered to deliver said sum of $1,200 to plaintiffs, E. A. Kinsel and wife, Linnie Kinsel. The court by its decree finding that title at all times to said sum of money had been in plaintiffs, E. A. Kinsel and Linnie Kinsel, and that B. B. White had never had any title thereto, nor had his trustee in bankruptcy, the intervener, Jesse Wright.

After judgment plaintiff in error, Jesse Wright, filed a request for findings of fact and conclusions of law. The trial court in response thereto filed his findings of fact and conclusions of law.

The court properly overruled plaintiff in error's plea in abatement and his first special exception as being without merit. The federal court issued no restraining order against the state court to prevent it from proceeding with the case. The $1,200 deposited in the First National Bank of Hebbronville was a special fund, to be applied to the particular purpose of paying for the work and material placed in said garage, as the work progressed, and therefore at no time was it the property of B. B. White or the trustee in bankruptcy.

The pleadings of defendants in error specially allege that the building was not built in substantial compliance with the contract, and show the defects in the construction, and the court correctly overruled exceptions filed by B. B. White and intervener Wright, trustee.

The evidence fully established that the labor and material placed in said building was not accepted as the work progressed, by E. A. Kinsel and his wife, Linnie Kinsel. It was alleged and proven that the garage was not completed in substantial compliance with the contract, but was left in an incomplete and dangerous condition. Hence the court properly rendered judgment for defendants in error against plaintiff in error.

The $1,200 left in the bank was at all times the property of defendants in error, and it was not required under the Bankruptcy Code to present any claim therefor. It never became the property of White nor of his trustee in bankruptcy.

The pleadings of all the parties and the evidence show an agreement between Kinsel and White for the transfer of the notes and lien and the placing of the money in the First National Bank of Hebbronville as a special account. This clearly authorized the court to make the findings of which no complaint can be heard, and plaintiff in error is estopped to complain. It is apparent that, White not having completed said garage and not having constructed the same in substantial compliance with the contract, the court properly rendered judgment for the amount shown therein. The evidence supports the court's findings and judgment. When complaint was made of apparent defects, from time to time, White gave his promise to rectify them. While the defects were not easily detected by a non-expert, they were easily detected by Mr. Kinsel, who was quite familiar with work of that kind. The building was not accepted as the work progressed so as to amount to an acceptance of the building in full.

The court found as follows: "I find that E. A. Kinsel made the payments at the time as the evidence showed the payments were made, but that said payments were not made on any estimates but were made only in response to request of B. B. White and upon representations of B. B. White that such sums of money were due him, and in Paragraph Four (4) of said findings of fact, the said payments were made at the request and upon representations of B. B. White that he would complete said building in a substantial compliance with the terms of the contract."

Plaintiff's first amended original petition shows that this suit was instituted by defendants in error against B. B. White and National Surety Company on August 15, 1927. That the defendant National Surety Company filed its answer in this cause October 4, 1927, while the cause was pending in the district court of Jim Hogg county. The defendant B. B. White filed his answer in this cause on March 30, 1928, while suit was pending in the district court of Jim Hogg county.

That the First National Bank of Hebbronville, Tex., was made defendant in the cross-action by defendant B. B. White on March 30, 1928.

The defendant First National Bank of Hebbronville answered prior to October 11, 1928. B. B. White was declared a bankrupt by the federal court on or about April 2, 1929, and intervened in this cause on December 10, 1929.

There was no order by the federal court restraining further proceedings in the state court.

█ The bank had no right or title to the fund in question, and its receiver had no greater right than it had. The court in case of Banco Minero v. Ross & Masterson, 138 S. W. 224, Court of Civil Appeals, which judgment was affirmed by the Supreme Court in 106 Tex. 522, 172 S. W. 711, held that the $40,000 being placed in said bank by Ross & Masterson was held by the bank as bailee for Ross & Masterson.

Plaintiff alleged that defendant White failed to properly perform the work in the following particulars, to wit:

"1. In the rear of the building the walls should have been brought up above the roof so as to hide the gable. This was not done.

"2. The middle ceiling was very badly placed and poorly made and a crack showed where the sheets of the metal meet.

"3. That where pipes came into the building, instead of neat holes being made and filled up properly, large holes were left.

"4. Toilet fixtures were to be tested before using to discover any leaks and defects existing, but this was not done and they were left in such a condition that they all had to be reset by plaintiffs.

"5. That defendant, while painting the walls and floors, left them in a messy condition; that no ceiling was placed in the toilets as provided in the contract; that the sliding door was to be placed on a track, the slides were too light and the door constructed was practically worthless.

"6. No roof built over the wash-rack, as provided for in the contract, plans and specifications."

Defendants in error specially denied that they at any time accepted any of said work or in any manner misled White into thinking that they had accepted said work, and, immediately after the abandonment of said work by said White, E. A. Kinsel began to insist that he complete and make good said work; and alleged that the foundation and walls were so faulty and defectively constructed that the first wind of any magnitude would likely wreck said building, that it was dangerous to occupy same; and further alleged that said building was a business homestead of Kinsel and wife, the defendants in error.

After testifying as to various defects, witness Zachry testified: "You ask me what in my opinion it would cost in dollars and cents to put this building in a first class condition as contemplated by these plans and specifications, or if not, tell you what it would be necessary to do. If you want to comply with the exact specifications under which the building was supposed to be built, it would be necessary to remove practically the entire foundation; rebuild all the columns; build up the walls which would necessitate removing some tile; tear up and rebuild part of the floor; place plates on all columns when properly built; these are some of the items. All that work would cost in the neighborhood of Four Thousand Dollars."

The defects found and pointed out are too numerous to mention, and there is no substantial evidence showing any waiver of defects on the part of the owners.

The evidence shows that Mr. Kinsel was inexperienced in concrete work and building, and it is clear that he relied upon the building being constructed according to the contract, plans, and specifications, and relied upon Mr. White and his employees to do the work in a proper way and make proper mixtures of concrete, etc. It is clear and uncontradicted that Mr. Kinsel, when he noticed anything of the work or material that did not appear right, did mention the matter to Mr. White or his foreman, and that he was assured that everything was being done right and would be fixed in the proper way, and Mr. White explained to him that he must have the money to pay the labor and take care of the expenses of the building, and that Mr. Kinsel relied upon the promises and statements made by said White and his foreman, Mr. Wise, and made the payments from time to time.

E. A. Kinsel testified: "The contract price for that building was Nine Thousand Dol-

lars. To secure the money for the payment of this Nine Thousand Dollars I made arrangements with Mr. Yeager to loan me the money on the building for Seventy-five Hundred Dollars and I was to put in Fifteen Hundred Dollars. The money that Mr. Yeager loaned me was placed in the bank to the credit of the Kinsel-White Building Fund. I had exclusive control of that fund; it was subject to my check only. Out of that fund I paid by check to Mr. White Seventy-eight Hundred Dollars. The fund included the Seventy-five Hundred Dollars that I borrowed from Mr. Yeager and the Fifteen Hundred Dollars that I placed there with my own check."

There is no dispute as to how the money was deposited as a special deposit. It is clear from the testimony that the lien and notes mentioned in the contract were transferred to Mr. Yeager and $7,500 paid, and that the money was placed in the Hebbronville Bank as a special deposit. Later the $7,500 was about exhausted, and Kinsel placed $1,500 more from his personal account in said special fund for said building. All the $7,500 was checked out on the building and $300 of the $1,500, so it is clear that the $1,200 left with the bank was from the $1,500, and the same was a special deposit fund to be used only by Kinsel in paying White for the construction of said garage building.

Under the law, defendants in error were entitled to the $1,200 if the damages suffered by Kinsel and wife by reason of the breach of the building contract by White amounted to that sum. The court found that they sustained damages in a much larger sum, to wit, the sum of $3,200, and very properly rendered judgment for the defendants in error for the $1,200. White being a bankrupt, no personal judgment was rendered against him.

There was much testimony introduced in evidence, and it well supports the court's findings.

The briefs are lengthy, but we have carefully gone through them. We think the findings and judgment of the court are satisfactory.

Finding no error assigned that should cause a reversal, the judgment is affirmed.